CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
March 02, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Tallulah Costa
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) Case No. 7:25-CR-11 |
| WENDELL ANTONIO JOHNSON, et al., | ) ) ) ) |

**MEMORANDUM OPINION**

Wendell Johnson filed a motion to suppress evidence seized from the execution of two search warrants on his residence located at 2907 Yorktown Place, Roanoke, Virginia. Dkt. 68. The parties fully briefed the motion, and the court heard oral argument. For the reasons stated on the record and discussed below, the motion to suppress is **DENIED**.

I. **Background**

During the execution of two search warrants on Johnson's residence, law enforcement officers found eight bricks of cocaine and two bricks of fentanyl. Johnson was indicted for conspiracy to distribute cocaine and fentanyl, and possession of cocaine and fentanyl with the intent to distribute. Dkt. 27. After he was indicted, Johnson moved to suppress the evidence on the ground that the searches violated the Fourth Amendment. Dkt. 68. The Government opposes the motion to suppress.

   a. **February 11, 2025 Search Warrant**

On February 11, 2025, Drug Enforcement Administration Task Force Officer Ryan Sloan applied to a federal magistrate judge for a search warrant relating to two residences in Roanoke,

Virginia, located at 2414 Massachusetts Avenue NW and 2907 Yorktown Place SW;[1] the person of Wendell Johnson, and the person of John Glass.[2] Dkt. 68-2. The basis for the search was for evidence related to drug distribution, use of a communication facility to facilitate drug distribution, and conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841, 843 & 846. Dkt. 68-2. The items to be seized were "fruits, evidence, and/or instrumentalities of, and relating to the distribution of controlled substances," including records or receipts related to rental cars, records or other evidence related to cell phones, and other electronics such as computers and digital devices. *Id.*

In support of the application for search warrant, Officer Sloan provided a 33-page affidavit outlining his experience and training in drug trafficking and detailing the investigation into Johnson, which spanned six years, beginning in 2019. Dkt. 68-2. Officer Sloan outlined his expertise as a Task Force Officer for the DEA, including involvement in numerous drug trafficking investigations; discussions with informants, suspects and other experienced narcotics traffickers regarding the methods and practices of drug traffickers; and the execution of numerous search warrants and arrest warrants for offenses involving distribution of controlled substances.

Officer Sloan stated his knowledge that individuals involved in drug trafficking crimes will store controlled substances, packaging materials and drug proceeds at their residences or other trusted locations where they either know the occupant or otherwise exert some control over

---

[1] Johnson inherited the home located at 2414 Massachusetts Avenue NW from his grandmother. Johnson's place of residence is 2907 Yorktown Place SW.

[2] There are two identical warrants issued this same day, one incorrectly lists "Target Location 2" as Yorktown Plaza S.W, which was not served, and the other lists "Target Location 2" as Yorktown Place SW. See Dkt. 68-1 & 68-2. Both warrants include the same affidavit by TFO Ryan Sloan.

the residence. Officer Sloan stated that such individuals will often maintain books, records, receipts, notes, ledgers and other papers related to the distribution of controlled substances in the same locations. Officer Sloan also stated that, through his training and experience, those involved in drug trafficking offenses frequently use electronic devices such as cell phones to communicate with others regarding the distribution of controlled substances and keep cell phones on their persons, in their residences, or in their vehicles.

The bulk of the affidavit details the investigation into Johnson and his alleged coconspirator John Glass, beginning with Johnson's prior drug trafficking history. In 2005, Johnson pled guilty to conspiracy to distribute cocaine and possession with intent to distribute, related to a search of the Massachusetts Avenue property. Johnson served time in prison and was released in 2020. Johnson was on supervised release for 5 years prior to his arrest in this case.

Law enforcement began investigating Johnson relating to drug trafficking prior to his release from prison. The investigation involved years of surveillance; seized packages containing controlled substances delivered to the Massachusetts Avenue address; the arrests of multiple drug couriers who communicated with Johnson by cell phone during their travels outside of the Western District of Virginia to obtain or deliver narcotics; Johnson's meeting with a drug courier at the Massachusetts Avenue address; narcotics found in a vehicle owned by Johnson; and narcotics found in a vehicle rented by Johnson. The affidavit detailed how Johnson coordinated cross-country trips with multiple couriers to obtain and distribute narcotics and Johnson used cellphones and multiple phone numbers to communicate with the couriers.

Specifically, regarding the Yorktown Place residence, Officer Sloan stated that Johnson used Yorktown Place as his primary residence; he used it as a return address for court filings and he listed it as his residence with probation; that surveillance observed Johnson at the residence

recently; that one of the drug couriers delivered a package to Johnson at a convenience store nearby the Yorktown Place residence; and law enforcement observed another known drug courier at the Yorktown Place residence. Officer Sloan stated that based on his training and experience, Johnson's use of multiple residences leads him to believe that Johnson stores narcotics, drug proceeds and other evidence related to his drug trafficking activity, including electronic devices, at multiple residences, including Yorktown Place. Officer Sloan stated that, at minimum, records related to the crime under investigation, such as money and cellphones are likely to be stored at Yorktown Place.

The magistrate judge determined that probable cause existed to support the search warrant and granted the application for warrant on February 11, 2025. Later that day, the officers executed the search warrant at Yorktown Place, after observing John Glass arrive at the residence in a rental vehicle that he had driven cross-country, while in close communication with Johnson. Officers observed Glass bring two bags from the vehicle into the Yorktown Place premises. Upon executing the search warrant inside the Yorktown Place residence, officers observed a red plastic bag underneath a coffee table that appeared to contain multiple bricks of suspected narcotics. Officers also observed a gray bag that had been unzipped with multiple bricks of suspected narcotics. The officers did not seize the suspected narcotics, but did seize records and receipts related to rental cars, cellphones, and electronics pursuant to the February 11, 2025 search warrant.

    b.  **February 12, 2025 Search Warrant**

On February 12, 2025, the officers returned to the magistrate judge to request a second search warrant to search for narcotics in Johnson's Yorktown Place residence and three vehicles used by Johnson and Glass. The February 12 warrant included an affidavit from DEA Special

Agent Kevin Olsen providing his extensive training and experience in illegal drug smuggling and distribution, describing the events during the execution of the February 11 warrant, and attaching TFO Sloan's affidavit submitted in support of the February 11 search warrant. Agent Olsen stated that prior to executing the February 11 warrant, officers observed Glass arrive at the Yorktown Place address, grab two bags from the rental car and enter the residence. Officers executed the warrant and observed a red plastic bag underneath a coffee table that appeared to contain multiple bricks of suspected narcotics. Officers also observed a gray bag unzipped on the arm of a couch that contained multiple bricks of suspected narcotics. When officers entered the residence, Johnson attempted to exit through a sliding glass door at the rear of the house. A trained narcotics K-9 conducted an open-air sniff of the vehicle Glass arrived in while it was parked outside of Yorktown Place and positively alerted to the presence of narcotics. The magistrate judge signed the February 12 warrant, and it was executed the same day.

Johnson filed a motion to suppress the February 11 and 12 search warrants as they relate to Yorktown Place, asserting that probable cause does not exist to connect Johnson's Yorktown Place residence to drug trafficking activity. Johnson does not dispute that both search warrants contain probable cause to search the Massachusetts Avenue address for narcotics. I find that sufficient probable cause existed for both search warrants executed on Johnson's residence at Yorktown Place and DENY the motions to suppress.

## II.    Legal Standard

Johnson bears the burden to establish that the search or seizure violated his Fourth Amendment rights. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). "Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence." *United*

5

*States v. Hale*, No. 7:19-CR-004, 2023 WL 6465141, at *3 (W.D. Va. Oct. 2, 2023) (quoting *United States v. Bello-Murillo*, 62 F. Supp. 3d 488, 492 (E.D. Va. 2014)).

An application for a search warrant must provide a basis for a magistrate judge to find that there is probable cause for a search. *United States v. Gary*, 528 F.3d 324, 328 (4th Cir. 2008). Probable cause suggests that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). It is a "practical, nontechnical conception." *Id.* at 231. In this sense, "a magistrate has the 'authority ... to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant.'" *United States v. Bynum,* 293 F.3d 192, 197 (4th Cir. 2002) (quoting *Gates,* 462 U.S. at 240).

A court reviewing a magistrate judge's probable cause determination does not assess the existence of probable cause *de novo*. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam). Rather, the district court must only ascertain whether "the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (internal quotations omitted). In doing so, courts should accord the magistrate judge's determination "great deference," and should not invalidate warrants by "interpreting [them] in a hypertechnical, rather than commonsensical, manner." *Gates*, 462 U.S. at 236. "Where, as here, a defendant challenges the sufficiency of an affidavit underlying a search warrant, a reviewing court may look only at the information actually provided to the magistrate in the warrant application process." *United States v. Morton*, No. 3:17-CR-161, 2018 WL 701281, at *3 (E.D. Va. Feb. 2, 2018), *aff'd*, 740 F. App'x 320 (4th Cir. 2018). To determine whether probable cause supported a search warrant, a court must apply a totality of the circumstances test. *Gates,* 462 U.S. at 231, 233.

### a. Good Faith Exception to Exclusionary Rule

If the court finds that the warrants were not supported by probable cause, it must determine if the good faith exception to the Fourth Amendment exclusionary rule articulated in *United States v. Leon*, 486 U.S. 897 (1987) applies. The Supreme Court instructed in *Leon* that even where the totality of the circumstances demonstrates that there was no substantial basis to find probable cause, the fruits of a search should not be suppressed unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.*, at 923 n. 23. This good-faith exception, as it is commonly called, does not apply in four circumstances: (1) when the magistrate judge was misled by a knowing or reckless falsity in the affidavit; (2) when the magistrate judge abandoned their neutral, judicial role; (3) when an "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is so "facially deficient" that an officer could not "reasonably presume it to be valid." *Id.* at 923.

The *Leon* Court explained "that the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued by a magistrate." *United States v. Perez,* 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon,* 468 U.S. at 920). "Hence, under *Leon's* good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" *Id.* (quoting *Leon,* 468 U.S. at 922). The *Leon* Court admonished that searches conducted "pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468 U.S. at 922 (internal quotation marks omitted).

III.   Analysis

    a. **Probable Cause- February 11, 2025 Search Warrant**

Johnson argues that the February 11 search warrant lacked the required nexus between the Yorktown Place residence and the items to be seized.[3] He argues that law enforcement did not provide sufficient probable cause as to why they expected Yorktown Place *in particular* to contain contraband or evidence of a crime. Johnson relies heavily on this statement in Officer Sloan's affidavit:

> Johnson's predominant use of [Massachusetts Avenue], coupled with his willingness to advise his Probation Officer that [Yorktown Place] is his primary residence, might make it less likely that he stores contraband such as narcotics and firearms at this location. Therefore, out of an abundance of caution, at this time your affiant is only requesting permission to search [Yorktown Place] for items that may appear innocuous, but are connected to the offenses under investigation.

Dkt. 68-2, p. 20. Johnson argues that the above statement contradicts Officer Sloan's assertion that "Johnson's connection to and use of, multiple residences lead me to believe that he stores narcotics, drug proceeds, and other evidence related to drug trafficking activity, including electronic devices, in multiple locations." Dkt. 68-1, p. 18.

    Johnson asserts that the search warrant affidavit must establish a specific nexus between the Yorktown Place address and suspected narcotics activity, and that generalized drug activity together with Johnson residing at Yorktown Place is insufficient to meet that bar. The government counters that the required probable cause nexus is met because the affidavit establishes that Johnson coordinated cross-country trips with multiple couriers to obtain and distribute narcotics, the affidavit highlights the role of cellphones and multiple phone numbers

---

[3] Johnson acknowledges that the February 11 search warrant affidavit stated probable cause to search the Massachusetts Avenue address for narcotics.

used by Johnson to communicate with the couriers, the affidavit clearly establishes that Johnson lived at the Yorktown Place address, the affidavit notes that a drug courier was at the Yorktown Place address, that another courier delivered a package of what she "assumed" were narcotics to a convenience store nearby the Yorktown Place address, and that based on Officer Sloan's experience drug dealers routinely store contraband, financial records, electronic devices, and other indicia of drug trafficking at their homes.

Johnson construes the probable cause standard too narrowly. The Fourth Circuit has long held "that an affidavit need not directly link the evidence sought with the place to be searched. Instead, the nexus requirement also may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Jones*, 942 F.3d 634, 639 (4th Cir. 2019) (internal quotations and citations omitted). "[A] sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought to the defendant's residence." *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (internal quotation marks omitted).

In *United States v. Williams*, the Fourth Circuit reaffirmed its "consistent determ[ation]" that there is probable cause to support search warrants of suspects' residences and even temporary abodes on the basis of: 1) evidence of the suspects' involvement in drug trafficking; combined with 2) the reasonable suspicion, either articulated by the applying officer or implicitly arrived at by the magistrate judge, that drug traffickers store drug-related evidence in their homes. 548 F.3d 311, 319 (4th Cir. 2008). The *Williams* court held that it was error to discount the agent's assertion of training and experience-based knowledge to tie the suspects' drug trafficking activities to their residences for purposes of probable cause. *Id.* at 320.

As the court explained in *United States v. Grossman*, "[w]hen issuing a warrant and making a probable cause determination, judges are to use a "totality of the circumstances analysis."" 400 F.3d at 217 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "As part of such a common sense determination . . . 'it is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key.'" *Williams*, 548 F.3d. at 320 (quoting *Grossman*, 400 F.3d at 218). Further, the *Grossman* court noted that searches were not invalid merely because the defendant "splits his time among several different homes." 400 F.3d at 218.

Here, Officer Sloan's affidavit set forth in detail his training in narcotics investigations and operations as well as facts in support of probable cause for the search. The affidavit detailed a years long investigation into Johnson's connections with drug activity, his use of multiple cell phone numbers to communicate with drug couriers, and his use of rental cars. The affidavit recounted an investigation of Johnson spanning six years, involving surveillance of the Massachusetts Avenue address and the Yorktown Place address; surveillance of Johnson meeting with known narcotics couriers; multiple known couriers implicating Johnson as coordinating their trips and narcotics purchases; narcotics found in vehicles either registered to Johnson or rented by Johnson; and evidence of phone communications between the couriers and Johnson discussing the trips, narcotics and delivery of packages. The affidavit also clearly established that Johnson resided at the Yorktown Place residence.

Johnson correctly argues that the evidence does not specifically point to narcotics being stored in or distributed from the Yorktown Place address; rather, as Johnson admits, the evidence links narcotics to the Massachusetts address. However, Fourth Circuit case law clearly establishes that a sufficient probable cause nexus can exist where the affidavit supporting the warrant provides evidence that Johnson was involved in drug trafficking; that Johnson lived at

the Yorktown Place address; and that in Officer Sloan's experience, drug traffickers store drug-related evidence in their residences. *See United States v. Jordan*, No. 21-4278, 2023 WL 2947433, at *3 (4th Cir. Apr. 14, 2023) (finding probable cause to search a residence where there was evidence of defendant's drug activity; defendant had a criminal history including felony drug offenses; defendant provided the target address as his primary residence on multiple occasions; a vehicle defendant drove during a controlled purchase was registered to the target address; and the officer's assertion that drug traffickers frequently conceal narcotics within their own residences).

### b. Probable Cause-February 12, 2025 Search Warrant

Johnson also objects to the February 12 warrant issued to search for narcotics at Yorktown Place. Johnson argues that the criminality of the suspected narcotics observed by officers in the red tote bag and grey backpack was not "immediately apparent," and suggests that the cellophane wrapped packages of suspected narcotics could have been innocuous items such as shrink-wrapped white t-shirts, or game boy consols. Again, Johnson distorts the standard for probable cause. Agent Olsen did not have to disprove all innocent explanations for the brick-sized, plastic-wrapped items contained the open bags in Johnson's residence to the magistrate judge when seeking a warrant. Rather, Agent Olsen needed to establish a reasonable basis to believe the items in the bags were narcotics.  This standard was met by the affidavit stating the agent's training and experience with drug trafficking investigations; the officers witnessing Glass arrive at the Yorktown Place residence in a vehicle he drove cross-country and bring two bags from the vehicle into Yorktown Place; the officers' visualization of two open bags inside Yorktown Place with multiple bricks of suspected narcotics; the positive K-9 alert on Glass's car;

11

and the years long investigation into Johnson for drug trafficking. Accordingly, I find that probable cause existed to support the February 12 search warrant.

### c. Good faith exception

Even if the February 11 and 12 search warrants were not supported by probable cause, they would nevertheless be admissible under the good faith exception to the Fourth Amendment exclusionary rule, as articulated in *United States v. Leon*, 468 U.S. 897 (1984). The evidence reflects that the DEA agents acted in objective good faith in seeking and relying upon the two search warrants. There is no indication that Agents Sloan or Olsen acted recklessly, were dishonest or grossly negligent. The affidavits supporting the search warrants are detailed and reveal an extensive investigation. This is not the sort of "bare bones" affidavit that is so insufficient it was objectively unreasonable for the officers to rely upon it. *See United States v. Wilhelm,* 80 F.3d 116, 121 (4th Cir. 1996) (A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause."); *United States v. Hooks*, No. 214cr644, 2015 WL 1810896 (D.S.C. Apr. 21, 2015) (good faith exception applies where affidavit was insufficient to show probable cause but indicated "at least some degree of investigation and corroboration.").

IV.     Conclusion

The search warrants issued on February 11 and 12, 2025 stated sufficient probable cause to search Johnson's Yorktown Place residence. Accordingly, Johnson's motion to suppress evidence related to those warrants is **DENIED**. An order will follow.

Entered:  March 2, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge